UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL ANTHONY ABELS,

    Plaintiff,

v.

HAROLD CLARKE, *et al.*,

    Defendants.

Case No. C07-5303 RBL/KLS

REPORT AND RECOMMENDATION

**NOTED FOR: March 28, 2008**

Presently before the Court is the motion to dismiss of Defendants Harold Clarke, Kristine Skipworth[1] and Norman Hill.  (Dkt. # 33).  Defendants claim that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6), as Plaintiff has failed to exhaust his administrative remedies, failed to state a claim upon which relief can be granted, and because Defendants are entitled to qualified immunity.  *Id*.  Plaintiff has filed a response.  (Dkt. # 61).

For the reasons stated below, the Court recommends that the motion to dismiss be granted and Plaintiff's claims be dismissed without prejudice as to all Defendants because Plaintiff has failed to

---

[1] Named by Plaintiff as Christen Skipworth.  The correct spelling of Ms. Skipworth's first name is "Kristine."

REPORT AND RECOMMENDATION - 1

exhaust his administrative remedies, except as to Plaintiff's claim of retaliatory transfer. With respect to that claim, the Court recommends that Plaintiff be granted leave to amend.

## I.  FACTUAL BACKGROUND

**A.  Procedural Background**

On July 3, 2007, Plaintiff's Complaint against Defendants Clarke, Skipworth, and Hill was filed. (Dkt. # 5). Plaintiff claimed that Defendants failed to provide him with medical care when Plaintiff was beaten by a mentally ill prisoner. (*Id*.). The Court ordered service of the complaint on Defendants. (Dkt. # 6). On July 19, 2007, Plaintiff filed a First Amended Complaint. (Dkt. # 7). In the First Amended Complaint, Plaintiff added three defendants and claimed that the Indeterminate Sentence Review Board (ISRB) wrongfully placed him in a work release program for sex offenders and for the physically and mentally disabled. (*Id*.). Plaintiff also claimed that Defendants failed to provide him with medical care. (*Id*.) The Court ordered the Plaintiff to show cause why his First Amended Complaint should not be dismissed for failure to state a claim pursuant to § 1983. (Dkt. # 23). After providing Plaintiff the opportunity to replead, the Court liberally interpreted Plaintiff's "Motion to Amend" (Dkt. # 27) as the Amended Complaint,[2] but directed the Plaintiff to supplement with a demand for judgment. The Amended Complaint, naming Defendants Harold Clarke, Kristine Skipworth and Norman Hill, should therefore be read with the Supplement which Plaintiff filed at the direction of the Court. (Dkt. # 32).

**B.  Plaintiff's Allegations**

---

[2] *See also* Dkt. # 27, where Plaintiff attaches a copy of his "Motion to Amend" as his Amended Complaint in response to Defendants' claim that Plaintiff failed to serve the Amended Complaint.

REPORT AND RECOMMENDATION - 2

Plaintiff alleges that Defendant Harold Clarke transferred him to RAP/Lincoln Park Work Release House on January 10, 2007 and on January 30, 2007, a mentally ill work release prisoner attacked and beat Plaintiff. (Dkt. # 29, p. 1). Plaintiff reported the incident and his injuries to Defendant Kristen Skipworth, supervisor of the work release, and to Defendant CCO Norman Hill, but he was never given any medical treatment for his injuries. *Id*. He alleges further that to date he has not been given any medical treatment for any of his injuries, all in violation of his Eighth Amendment rights. Specifically, Plaintiff alleges he requested medical attention for over a week with no response and that his mother telephoned his CCO at the work release complaining about the lack of protection and medical attention for her son. *Id*., p. 5.

Plaintiff alleges that shortly after he was attacked at RAP/ Lincoln Park Work Release House, Defendants Skipworth and Hill sent him back to the state prison and placed him in isolation under the permission and authority of Harold Clarke. (Dkt. # 29, p. 5). Plaintiff further alleges that this transfer was "clearly out of retaliation, for the work release never served [him] any written reasons for his termination." *Id*., p. 6. Further, Plaintiff alleges that [he] was "never infracted by the work release for any major rule violation in the process of this unjustified termination and punishment." *Id*.

**C.    Grievance Process**

Defendants provide the Declaration of Devon Schrum, the Grievance Program Manager for the Office of Correctional Operations of the DOC, which is located in Tumwater Washington. (Dkt. # 33, Exh. 1).[3] Mr. Schrum's official duties include responding to questions regarding the

---

[3]*W*hen considering whether to dismiss a complaint for lack of exhaustion of administrative remedies, a court may properly look outside the pleadings to determine whether the issue has been exhausted. *Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir. 2003)

REPORT AND RECOMMENDATION - 3

inmate grievance program statewide, reviewing grievances appealed to Level III and reporting to courts and DOC officials on the status of the grievance program.  *Id.*, ¶ 2.

The Washington Offender Grievance Program (OGP) has been in existence since the early 1980s.  *Id.*, ¶ 3.  It was implemented shortly thereafter statewide. *Id.*

Under the OGP, inmates may file grievances on a wide range of issues relating to their incarceration challenging: 1) DOC institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions. *Id.* ¶ 4.

An offender may not file a grievance challenging: 1) state or federal law; 2) court actions and decisions; 3) Indeterminate Sentence Review Board actions and decisions; 4) administrative segregation placement or retention; 5) classification/unit team decisions; 6) transfers; and 7) disciplinary actions.  *Id.*, ¶ 4.

DOC's grievance program has a multi-tiered approach to address offender grievances. *Id.* ¶ 6.  Grievances regarding individuals at specific facilities must be sent to those facilities to allow staff to investigate those claims. *Id.* Staff at another institution does not have the jurisdiction over other facilities. *Id.*  The first level is the initial grievance, considered Level I. *Id.* Grievances are filed at this level when an offender is challenging a policy or procedure. *Id.* After receiving the response from the institution's grievance coordinator, the offender can submit an appeal of that decision in a Level II grievance. *Id.* These grievances are investigated further and the Superintendent at each facility responds. *Id.* Finally, if an offender does not agree with the Superintendent's response, he or she may file a Level III grievance that is submitted to the headquarters Grievance Coordinator in Tumwater, Washington. *Id.*  Level III grievances are the

REPORT AND RECOMMENDATION - 4

final step. *Id*. A finding of "not grievable" may also be appealed through the different levels. *Id*.

DOC's grievance process is well known to inmates. *Id*., ¶ 7. Currently, over 20,000 grievances are filed per year system wide. *Id*. An inmate must file his grievance at the facility where the concerns arose. *Id*. He cannot file at another facility because staff does not have jurisdiction over any other facility. *Id*.

Michael Abels, DOC # 634778, submitted an initial grievance dated March 16, 2007, Grievance Log ID # 070622, at McNeil Island Corrections Center (MICC), related to his claim that on January 30, 2007 he was assaulted by a work release prisoner. *Id*., ¶ 10, Attachment A.

This grievance was not properly filled out because Plaintiff sent it to the wrong institution. *Id*., ¶ 11. Plaintiff was placed at MICC and Plaintiff's issues related to staff at a work release facility. Plaintiff was informed that he had not properly filled out the grievance. *Id.*, Attachment A ("Be advised that per OGP-030(7) actions of persons not under the jurisdiction of this facility (MICC) are not grievable.") *Id*. Plaintiff failed to cure the defect. *Id*. He also did not appeal the grievance. *Id*.

## II.  DISCUSSION

**A.    Exhaustion of Remedies**

A motion to dismiss for failure to exhaust administrative remedies is properly brought as an unenumerated 12(b) motion. *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003) (citations omitted). On a motion to dismiss, material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969), *reh'g denied*, 396 U.S. 869 (1969); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). While the court can liberally construe a plaintiff's complaint, it cannot supply an essential fact an inmate has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)

REPORT AND RECOMMENDATION - 5

(quoting *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

When considering whether to dismiss a complaint for lack of exhaustion of administrative remedies, a court may look outside the pleadings to determine whether the issue has been exhausted. *Wyatt,* 315 F.3d at 1119-20. When dismissal is based on failure to exhaust administrative remedies, the dismissal should be without prejudice. *Wyatt*, 315 F.3d at 1120.

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

This requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). Further, "[a]ll 'available' remedies" must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Id.* at 524. Inmates must exhaust prison grievance remedies before filing suit if the grievance system is capable of providing any relief or taking any action in response to the grievance. *Booth v. Churner*, 531 U.S. 956, 121 S. Ct. 1819, 1825 (2001).

The Supreme Court recently reaffirmed this in *Woodford v. Ngo*. 126 S.Ct. 2378 (2006). In that case, the Court not only upheld the requirement that the inmates fully exhaust available administrative remedies, but it also held that those attempts needed to be done in a timely manner. *Id*. at 11.

In this case, the record reflects that Plaintiff has not exhausted the available administrative remedies for the claims he has asserted against Defendants with the exception of his claim that his

REPORT AND RECOMMENDATION - 6

transfer back to DOC from RAP/ Lincoln Park was retaliatory. (Dkt. # 29, p. 6).[4]

However, as to the remainder of Plaintiff's claims, a grievance directed at a particular individual at a particular institution is proof only as to that *particular incident*, *individual and institution.* The purpose of the exhaustion requirement is to "reduce the quantity and improve the quality of prisoner suits; . . . [and] afford corrections officials . . . opportunity to address complaints internally. . . . 42 U.S.C. § 1997e(a). It is also to remedy the weakening of an agency's effectiveness by the "frequent and deliberate flouting of administrative processes." *McKart v. United States*, 395 U.S. 185, 195 (1969). Plaintiff must utilize the internal administrative processes available within the particular institutions and may not rely on vague and conclusory grievances.

Accordingly, the record reflects that Plaintiff filed his lawsuit prematurely and has not yet fully exhausted his administrative remedies. Because Plaintiff failed to exhaust his available administrative remedies, his Complaint (Dkt. # 29 and 32) should be dismissed without prejudice as to all claims except as to his claim that his transfer from RAP Lincoln Park Work Release House was retaliatory.

**B.      Claim of Retaliatory Transfer**

Ordinarily, prisoners have no liberty interest in avoiding being transferred to another prison. See *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 2156, 225-27 (1976); *United States v. Brown*, 59 F.3d 102, 105 (9th Cir. 1995) (per curiam).

However, prisoners may not be transferred in retaliation. See *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (prisoners may not be

---

[4]The OGP does not allow an offender to file a grievance challenging his transfer. (Dkt.# 33, Exh. 1, ¶ 4).

REPORT AND RECOMMENDATION - 7

transferred for exercising their First Amendment rights).

Plaintiff alleges that shortly after he was attacked at RAP/ Lincoln Park Work Release House, Defendants Skipworth and Hill sent him back to the state prison and placed him in isolation under the permission and authority of Harold Clarke. (Dkt. # 29, p. 5). Plaintiff further alleges that this transfer was "clearly out of retaliation, for the work release never served [him] any written reasons for his termination." *Id*., p. 6. Further, Plaintiff alleges that [he] was "never infracted by the work release for any major rule violation in the process of this unjustified termination and punishment." *Id*.

Plaintiff has failed, however, to allege how this transfer has violated any constitutional right. Prior to dismissal of Plaintiff's complaint in its entirety, however, the undersigned recommends that he be given an opportunity to amend. *See, e.g., McGuckin*, 974 F.2d at 1055; *Noll*, 809 F.2d at 1449.

Accordingly, the undersigned recommends that Plaintiff be given an opportunity to amend his Complaint solely for the purpose of alleging if possible, how his constitutional rights were violated by Defendants Harold Clarke, Kristen Skipworth and Norman Hill relating to this transfer.

### III. CONCLUSION

For the reasons stated above the Court should **GRANT** Defendants' motion to dismiss (Dkt. # 33) and Plaintiff's Complaint (Dkt. # 29 and 32) should be **DISMISSED WITHOUT PREJUDICE, except that leave to amend should be GRANTED as to Plaintiff's claim of retaliatory transfer**. A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file

REPORT AND RECOMMENDATION - 8

written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 28, 2008**, as noted in the caption.

DATED this 7th day of March, 2008.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9