UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL ANTHONY ABELS,

    Plaintiff,

    v.

HAROLD CLARKE, *et al.*,

    Defendants.

Case No. C07-5303 RBL/KLS

REPORT AND RECOMMENDATION

**NOTED FOR: June 5, 2009**

Before the Court is Defendants' motion for summary judgment. Dkt. 120. Defendants argue that Plaintiff Michael Abels' claims should be dismissed on various grounds including failure to state a claim of retaliation and that his claims are barred by the *Heck* doctrine. Defendants support their motion with the Declarations of Norman Hill and Karen Thompson. *Id.*, Exhs. 1 and 2.

Mr. Abels filed his response (Dkt. 127) with attached "Addendum of Supportive Authority" (Dkt. 127-2), and his Declaration (Dkt. 128). Defendants also filed a Reply. Dkt. 129. Having carefully reviewed the parties' filings and balance of the motion, the Court recommends that Defendants' motion for summary judgment be granted.

**SUMMARY OF CASE**

REPORT AND RECOMMENDATION - 1

This action is proceeding on Plaintiff's Second Amended Complaint (Dkt. 81). The sole remaining claim is whether Defendants retaliated against Plaintiff when he complained about the lack of medical care by transferring him from a work release facility back to prison.[1] While Mr. Abels was at a work release facility working towards an eventual release on parole, he was accompanying another work release prisoner to work when that prisoner attacked him. Mr. Abels claims that he required but was never given any medical attention for his injuries and when he complained about the lack of medical care, the Defendants transferred him back to prison and had him placed in segregation. Defendants assert that Mr. Abels was transferred from the work release facility because they received a complaint from a citizen that Mr. Abels was harassing her and she felt concerned for her safety.

Following an investigation, Defendants revoked and suspended Mr. Abels' work release privileges for six months. Following a hearing before the Indeterminate Sentence Review Board (ISRB), the ISRB determined that Mr. Abels was ineligible for further work release consideration and added five years to his sentence.

## I. BACKGROUND

**A.     Plaintiff's Second Amended Complaint - Dkt. 81**

The following is a summary of the allegations contained in the Plaintiff's Second Amended Complaint: On January 30, 2007, Mr. Abels was attacked and beaten by a mentally ill prisoner. Dkt. 81, p. 1. Although Mr. Abels reported the attack to Defendants Kristen Skipworth and Norman Hill, he alleges that they failed to report the attack to proper authorities or provide him with needed medical care. *Id.* Mr. Abels complained about the lack of medical care for seven days and his mother called the work release to complain about the attack and lack of medical care. As a result of these complaints, the defendants transferred Mr. Abels back to prison at McNeil Island

---

[1] Mr. Abels' Eighth Amendment claims relating to lack of medical care were previously dismissed for failure to exhaust. Dkt. 72 (R&R); Dkt. 80 (Order Adopting R&R).

REPORT AND RECOMMENDATION - 2

Corrections Center (MICC) where he was placed in isolation. *Id*.

Mr. Abels contends that he was never given an infraction or any disciplinary or parole revocation hearing. *Id.*, p. 2. He was removed from the work release out of retaliation for expressing his feelings about the attack, lack of medical attention, and an ongoing investigation of staff and inmates at the work release. *Id*., p. 2, 20. He was questioned by a DOC investigation unit regarding an investigation of the work release staff and inmates at the work release regarding criminal activities with which he was not involved. *Id*., p. 2. However, when he refused to become an informant for the work release, he was left in isolation and the ISRB added five years to his sentence without any infraction or hearing for violating his parole. *Id*.

Mr. Abels seeks restoration of his parole status in work release, damages, and lost wages. *Id*., p. 17.

**B.      Defendants' Summary Judgment Evidence**

Defendant Norman Hill is a community corrections officer at the RAP/Lincoln work release facility run by DOC in Tacoma, Washington. Dkt. 120, Exh. 1, p. 1. His official duties include monitoring offender compliance with DOC policies, assisting offenders with certain living tasks like finding jobs or other programming and addressing complaints regarding offenders. *Id*. He has held this position since December 2003. *Id*.

The RAP/Lincoln work release is a facility in the community where offenders often reside before being released from DOC custody. *Id*. Offenders are able to participate in programming, such as work or education, but must return to the facility at night by a certain time. *Id*. The offenders are given greater freedoms to assist them in transitioning from a higher security facility like a prison to the community without restraint. *Id*.

Offenders that are under the jurisdiction of the ISRB must show that they are ready to be released to the community before they may be released from those sentences. *Id*., p. 2. The ISRB, DOC and offenders may enter into agreements to assist offenders in showing they are ready for

REPORT AND RECOMMENDATION - 3

such release. *Id*. These release plans were formally known as a Mutually Agreed Plan (MAP). Under the terms of a MAP, an offender may be placed in a work release facility like RAP/Lincoln, but they must abide by the rules of the facility in order to remain a resident. *Id*. Failure to abide by the rules could result in immediate removal from the facility to a higher security unit. *Id*. Such rules include obtaining employment, training, school, job searches, counseling groups, abide the law and other behaviors identified in their facility plan. *Id*.

Defendant Hill states that Mr. Abels was placed in a DOC work release, RAP/Lincoln, pursuant to a MAP with the hope that he would eventually be released from DOC custody. *Id*. The plan required Mr. Abels to abide by certain rules to show that he was ready to be released from DOC custody, including following the law. *Id*. Mr. Abels was a resident at the work release and was working at the Poodle Dog restaurant. *Id*.

Shortly after Mr. Abels began employment at the Poodle Dog, a citizen called Mr. Abels' counselor, Otto Credle, and complained that Mr. Abels had been stalking her. *Id*. The citizen stated that she was concerned for her safety because of Mr. Abels' actions of calling her persistently and appearing at her residence unannounced and uninvited. *Id*.

Defendant Hill states that DOC takes any allegations of any threats or unsafe behavior by its inmates seriously. *Id*. In particular, when a complaint is made by a citizen, DOC immediately returns a work release offender to the prison setting, pending an investigation into the allegations. *Id*. As a result of this practice, Mr. Abels was removed from the work release and placed immediately in a prison to protect the community. *Id*. Defendant Hill states further that an investigation was conducted and it was discovered that Mr. Abels had been calling this citizen at 5:45 a.m. requesting to visit her, relentlessly pursuing her after she rejected him, and that he made her very nervous and scared. *Id.*, p. 3

On March 13, 2007, RAP/Lincoln reviewed Mr. Abels' custody level but because Mr. Abels' had been placed at MICC, he was not present for the classification review. *Id*. At the

REPORT AND RECOMMENDATION - 4

review, Mr. Abels' counselor and other DOC staff determined that his custody level should be changed to medium custody and he could not return to the work release facility where he had resided. *Id*. As a result of the allegations and his problems at the work release, Mr. Abels will not be permitted to return to the RAP/Lincoln Work Release facility in the future. *Id*.

**C.     Mr. Abels' Summary Judgment Evidence**

In his declaration, Mr. Abels disputes that the MAP, pursuant to which he was placed in the work release facility was properly signed by the defendants and he also asserts that he was returned to prison three times for violating conditions in a MAP that was not valid. Dkt. 128, p. 2. He states that he was "arrested" by Defendant Hill and taken to MICC and placed in isolation because he discovered criminal activity that was taking place at the work release. *Id*. A couple of days after he was placed in isolation, "Harold Clarkes Investigation Unit" visited him in isolation and offered to return him to the work release if he became an informant. *Id*.

Mr. Abels states that part of the investigation included a staff member at the work release, Nicole Palk, who was having an affair with an inmate, Ryan Black, who has since been sent back to MICC. *Id*. Mr. Abels states that Mr. Black was also having an affair with Angela Howell.[2] Mr. Abels states that he began to have an affair with Ms. Howell and that she gave him all of her personal information so that he could become his sponsor and approved visitor. *Id*.[3] Mr. Abels states that he broke off his relationship with Ms. Howell when he discovered that she was still married and visiting Mr. Black at MICC. *Id*., p. 2. He also states that he told his counselor to remove her from his visiting list. *Id*., p. 3.

---

[2] Records attached to Mr. Abels' response indicate that Angela Howell is the woman identified by Defendants as the citizen who called Mr. Abels' counselor to complain about Mr. Abels. *See e.g.,* Dkt. 127, Exh. 9, p. 2.

[3] Mr. Abels refers to the Court to Exhibit B after asserting that Ms. Howell gave him all of her personal information. Exhibit B attached to his Declaration is a copy of the Decision and Reasons dated April 11, 2007 of the ISRB .100 Hearing. Dkt. 128, Exh. B.

REPORT AND RECOMMENDATION - 5

Mr. Abels states that after he was taken to MICC, he was visited by an investigation unit, who questioned him about the relationship between Ms. Palk and Mr. Black, the relationship between Ms. Howell and Mr. Black, and other illegal activities at the work release. *Id*. He states that Defendants Clarke, Skipworth and members of the investigation unit wanted to use him as an informant and because he was under threat of losing his MAP, he would have had no choice but to cooperate with them. *Id*., p. 4. However, on February 14, 2007, the ISRB discovered that he was arrested and returned to prison and isolation without notice of the allegations against him. *Id*.

The February 14, 2007 ISRB Decision states, in relevant portion, as follows:

BOARD DECISION:
The Board continued this hearing on it's own motion. From the Board's understanding Mr. Abels was at the tail end of his MAP (Mutual Agreement Plan) at Rap House Work Release and he showed up today in segregation at McNeil Island in handcuffs. There has been no infraction written that anybody is aware of. His counselor from Rap House indicated there is some kind of ongoing investigation involving other staff and offenders acting inappropriately and Mr. Abels is not part of that, however, the fact remains he is still in handcuffs in segregation and we are not sure why. So this should probably be referred to the Board Hearing Officer to see if he can find out any more information for us on what the underlying facts are and then Mr. Abels should be rescheduled on the next available docket.

Dkt. 127, Exh. 3.

Attached to Mr. Abels' sworn declaration is a copy of the Decision and Reasons of the ISRB following the .100 Hearing on April 11, 2007, final decision date of May 24, 2007. Dkt.128, Exh. B. That Decision states, in relevant portion, as follows:

BOARD DECISION:
This was a Deferred Decision. The full Board finds Mr. Abels not parolable and adds 60 months to his minimum term. The Board will schedule another .100 hearing in two years to review Mr. Abels' institutional conduct.

REASONS:
The Board last saw Mr. Abels in June of 2006, at which time he was maintained as conditionally parolable to a MAP (Mutual Agreement Plan). Since that time we attempted an additional hearing with Mr. Abels in February of 2007 after he had been returned from Rap House Work Release. At that time he was in Administrative Segregation pending an investigation and the hearing was continued until today. The investigation has apparently been completed and there are indications that Mr. Abels attempted to initiate an unwanted relationship with a private citizen who worked at

REPORT AND RECOMMENDATION - 6

the same restaurant where Mr. Abels was employed. The citizen expressed concern that Mr. Abels was pursuing her and had, in fact, written letters to her expressing his love. Mr. Abels maintains that after a few weeks of employment together they did briefly have a personal relationship, but that he discontinued the relationship because she was separated from her husband and involved with another inmate. He indicates that her allegations are based on the fact that he had rebuffed her. The investigation did not result in any infractions, however, the work release facility was concerned that his behavior presented an unacceptable risk and, through a classification action, they reclassified him to M13 custody and rendered him ineligible for work release participation. Mr. Abels would not be eligible for reconsideration for approximately six months.

Since his return to McNeil Island Corrections Center (MICC) Mr. Abels has spent the majority of his time in the segregation unit, initially for the investigation, but following his release to general population he refused a cell assignment and was returned to segregation, where he remains to date.

Mr. Abels' file reflects numerous occasions wherein he has been involved in behavior that has jeopardized his MAP (Mutual Agreement Plan). The Board remains concerned that he has not been able to demonstrate sustained stable behavior at virtually any facility he has been transferred to, and his latest activity has rendered him, at least currently, ineligible for any further movement within DOC for at least six month. All things considered, Mr. Abels is not appropriate for any immediate MAP planning and he should demonstrate sustained infraction free behavior for at least a couple of years before any further release consideration.

FACTS RELIED UPON:
The panel relied upon previous Board dictations, a review of the ISRB and DOC files, as well as the face-to-face interview with Mr. Abels, his DOC counselors from MICC and Rap House W/R, and his MICC psychologist on this date. The Board has also received two letters from Mr. Abels, received on April 10th and April 17th, 2007. These have been reviewed by the full Board.

Dkt. 128, Exh. B, pp. 1-4[4].

---

[4] Mr. Abels also attaches (1) the Current Classification Action indicating the decision to reclassify his eligibility for work release; (2) DOC Policy Directive 320.100; (3) RCW 72.04A.090 violations of parole or probation; (4) Confidential DOC Special Investigations Unit Case File; (5) Access Interface Form reflecting his release from MICC to Work release on January 10, 2007; (6) ISRB Mutual Agreement Plan; (7) photographs; (8) Undated and unsigned document with heading "Department of Corrections Disciplinary Committee, entitled "Reporting Staff Mis-Conduct;" (9) E-mails dated November 2006 regarding a disciplinary hearing for an infraction and reinstatement of Mr. Abels back to work release program; (10) a portion of Policy 350.300; (10) Declaration of Norman Hill; and (11) Defendants' discovery responses. Dkt. 127, Exhs. 6 through 19.

REPORT AND RECOMMENDATION - 7

## II. SUMMARY JUDGMENT

**A.    Standard of Review**

In examining Defendants' motion, the Court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 290 (1986); see also *California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other

REPORT AND RECOMMENDATION - 8

1 words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint
2 or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497
3 U.S. 871, 888 (1990).

### III. DISCUSSION

**A. Plaintiff's Evidence**

At the outset, the Court turns to Defendants' argument that Plaintiff's evidence should be stricken from the record because it is unauthenticated, incomplete and hearsay. Dkt. 129, p. 2. The Court is compelled to search the record for evidence supporting the position of the pro se litigator, *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) ("we must consider as evidence in his opposition to summary judgment all of [the pro se plaintiff's] [potentially admissible] contentions offered in motions and pleadings"), said evidence not having to be in admissible form, but merely susceptible to being placed in such form at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *See also Aholeli v. Hawaii Dept. of Public Safety*, 220 Fed. Appx. 670 (9th Cir. 2007). Here, Mr. Abels provided his Declaration, to which is attached the ISRB decision of May 24, 2007. Dkt. 128, Exh. B. The remaining evidence Defendants seek to challenge was drawn from material they produced to Plaintiff and/or evidence to which Defendants necessarily had access (*e.g.,* ISRB reports, discovery responses, prison handbooks and DOC policies). Whether or not it is presently in admissible form, Mr. Abels' evidence could be made so at trial.

**B. Retaliation**

It is well established that a prisoner may assert a cause of action against prison officials who retaliate against an inmate in response to the exercise of a constitutional right. *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985). To state a claim for retaliation, Plaintiff must establish: 1) that the activity he engaged in was constitutionally protected; 2) that the retaliation occurred because of, and infringed upon, his constitutionally protected activity; and that 3) the retaliatory actions were not reasonably related to legitimate penological interests. *Id*. at 531-32. In *Rizzo*, the Ninth Circuit emphasized that

REPORT AND RECOMMENDATION - 9

for a prisoner to state a cause of action based upon retaliation, he "must do more than alleged retaliation ... he must also allege that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Id*.

The Ninth Circuit has cautioned that retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which "often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id*. (quoting *Sandin*, 515 U.S. at 482). "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003).

The Court is also mindful that decisions regarding the placement and supervision of inmates are the unique province of prison officials. The law recognizes that, particularly in the context of prison administration, the prison administrators, not the courts, are in the best position to make decisions about prison security and the allocation of prison resources. *Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Hudson v. Palmer*, 468 US. 517 (1984). A prison inmate has no constitutional right to a particular classification or custody level. *Hernandez v. Johnston,* 833 F.2d 1316, 1318 (9th Cir. 1987), *citing Moody v. Daggett*, 429 U.S. 78 (1976). Inmates also have no constitutional right to be incarcerated in a particular prison and a transfer from one institution to another within a state's prison system does not implicate due process. *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

With these deferential standards in mind, the Court turns to Plaintiff's claims and the parties' summary judgment evidence.

To survive a summary judgment on a retaliation claim, a prisoner must do more than simply

REPORT AND RECOMMENDATION - 10

allege retaliation due to his exercise of constitutional rights. He must also allege that the prisoner's retaliatory action did not advance a legitimate penological goal, or was not narrowly tailored to achieve that goal. *Rizzo*, 778 F.2d at 532. Although it can be difficult to establish the motives or intent of Defendants, Plaintiff may rely on circumstantial evidence. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997; *Pratt*, 65 F.3d 802 ("timing can properly be considered as circumstantial evidence of retaliatory intent").

Mr. Abels states in his verified Second Amended Complaint that he reported the assault to Defendants Skipworth and Hill, that they did nothing; that they did not provide him with medical attention for his injuries, and that for seven days his mother called the work release to complain about his attack. Dkt. 81, p. 1. Defendants do not dispute that Mr. Abels was engaged in constitutionally protected conduct, but they deny that Mr. Abels' transfer had anything to do with the assault on January 30, 2007. Defendants maintain that Mr. Abels was transferred because he was a threat to the community. Dkt. 120, pp. 6-7.

As evidence of Defendants' retaliatory motive, Mr. Abels relies entirely on the circumstantial evidence that his transfer occurred on February 7, 2007, eight days after he was attacked on January 30, 2007. *Id*.

On the other hand, Defendants have presented evidence that Mr. Abels was transferred because the work release received a complaint from a citizen that Mr. Abels was harassing her and she felt unsafe. Dkt. 120, p. 7; Dkt. 120, Exh. 1, p. 1. Mr. Hill states that DOC immediately returns a work release offender to the prison setting pending an investigation into allegations of threats or unsafe behavior by inmates when such complaints are made by a citizen. *Id*. Thus, Mr. Abels was removed from the work release and placed immediately in prison to protect the community. *Id*. After the investigation was conducted and the citizen's complaint verified, his counselor and other DOC staff determined that Mr. Abels' custody level should be changed to medium custody and he could not return to the work release facility where he had resided. *Id*., p. 4.

REPORT AND RECOMMENDATION - 11

In response, Mr. Abels states in his declaration that he was taken to MICC and placed in isolation because he discovered criminal activity that was taking place at the work release and was offered to be returned to the work release only if he became an informant. Dkt. 128, p. 2. Mr. Abels also provides copies of the ISRB reports. Dkt. 127, Exh. 3 and Dkt. 128, Exh. B.

The ISRB reports do not contradict Defendants' position that Mr. Abels' transfer was made in response to a citizen's complaint and pending an investigation. At the time of the first ISRB report of February 14, 2007, there is an indication of "some kind of ongoing investigation involving other staff and offenders acting inappropriately," and the ISRB notes that Mr. Abels had not received an infraction and postponed his hearing until more information could be obtained. Dkt. 127, Exh. 3. The next decision of the ISRB indicates that the investigation of the citizen's complaint resulted in a conclusion that "the work release facility was concerned that Mr. Abels behavior presented an unacceptable risk and through a classification action, Mr. Abels was reclassified as ineligible for work release participation and ineligible for reconsideration for approximately six months." Dkt. 128, Exh. B.

In that same decision, the ISRB found Mr. Abels "not parolable[5]" and added 60 months to his minimum term based on "numerous occasions wherein he has been involved in behavior that has jeopardized his MAP (Mutual Agreement Plan)." Dkt. 128, p. 9. In reaching that decision, the ISRB noted that it relied on its previous records and files, an interview with Mr. Abels, his counselors and submissions from Mr. Abels in reaching its decision. *Id*.

Viewing all the evidence in the light most favorable to Mr. Abels, the undersigned concludes that Mr. Abels cannot establish as a matter of law, the third prong under *Rizzo*, that the alleged retaliatory actions taken were not reasonably related to legitimate penological interests. His own

---

[5] Although Mr. Abels refers to his parole status and insists that it was improperly revoked, the evidence indicates that Mr. Abels was not on parole, but was still serving his life sentence. Dkt. 120, Exh. 2, Attach. A.

REPORT AND RECOMMENDATION - 12

evidence reflects that he was removed from the work release following an investigation involving his attempt to initiate an unwanted relationship with a private citizen who worked at the same restaurant where Mr. Abels was employed. Dkt. 128, p. 8.

More importantly, however, because Mr. Abels seeks to attack the propriety of the ISRB's decision finding him not parolable and adding 60 months to his minimum term, the Court agrees with Defendants that his claims must be dismissed without prejudice as his sole remedy is in habeas. Thus, Mr. Abels' arguments that the investigation following his initial transfer was improper or that he was not provided due process are more properly the subject of such a petition.

**B.     Revocation of Parole by ISRB - *Heck* Doctrine**

Mr. Abels argues that contrary to their own policies, Defendants held a classification hearing without first notifying him of his rights, allowing him to be present, and holding a hearing composed of fact finding and disposition. Dkt. 127, p. 2. Defendants present evidence that Mr. Abels is still serving a life sentence. Dkt. 120, Exh. 2, Attach. A. He was at a work release facility on a MAP program, working towards an eventual release on parole. *Id.*, Exh. 1. Therefore, he was not on parole and was not arrested when he was transferred to the prison. *Id.*, Exh. 1, p. 2.

Mr. Abels also argues that after he was returned to prison, his parole was improperly revoked and the ISRB added five more years to his sentence. Dkt. 81, p. 17. Mr. Abels seeks restoration of his previous status, damages and lost wages. *Id.*, p. 17. Because Mr. Abels' confinement has not previously been held invalid, his claims are not cognizable under 42 U.S.C. § 1983, but they would be in habeas.

In order to recover damages for an alleged unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28

REPORT AND RECOMMENDATION - 13

U.S.C. § 2254. *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Id.*

Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* If the court concludes that the challenge would necessarily imply the invalidity of the judgment or continuing confinement, then the challenge must be brought as a petition for a writ of habeas corpus, not under § 1983." *Butterfield v. Bail,* 120 F.3d 1023, 1024 (9th Cir.1997) (*quoting Edwards v. Balisok*, 520 U.S. 641 (1997)).

In this case, Mr. Abels seeks "restoration to his [parole] status in work release," and he seeks monetary damages. Dkt. # 81, p. 17. A finding in Mr. Abels' favor that he is entitled to such relief would necessary imply that the judgment imposed by the ISRB is invalid. Thus, his claim is not cognizable under Section 1983, but must be brought in habeas. In addition, prisoners in state custody who wish to challenge the length of their confinement in federal court by a petition for writ of habeas corpus are first required to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every issue they seek to raise in federal court. 28 U.S.C. § 2254(b)(c); *Granberry v. Greer*, 481 U.S. 129, 134 (1987); *Rose v. Lunday*, 455 U.S. 509 (1982); *McNeeley v. Arave*, 842 F.2d 230, 231 (9th Cir. 1988).

Because Mr. Abels has presented the Court with no evidence that he has exhausted his state remedies, the undersigned recommends that his claims be dismissed without prejudice.

**C.  Personal Participation**

Defendants also argue that Mr. Abels' claims against them should be dismissed because he

REPORT AND RECOMMENDATION - 14

failed to allege that they personally participated in the acts alleged. As to Plaintiff's allegations against Defendant Clarke, the Court agrees.

Under 42 U.S.C. § 1983, a plaintiff must also allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). To obtain relief against a defendant, the plaintiff must prove the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold*, 637 F.2d at 1355; *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (1977). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, which he or she is legally required to do, which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Rizzo v. Goode*, 423 U.S. 362, 370-71 and 375-77 (1976); *Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts showing a causal connection between each defendant's action and the harm allegedly suffered by plaintiff. *Aldabe*, 616 F.2d at 1092; *Rizzo*, 423 U.S. at 371.

Defendants in a 42 U.S.C. § 1983 action cannot be held liable based on a theory of resopndeat superior or vicarious liability. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir. 1986). Absent some personal involvement by the defendants in the allegedly unlawful conduct of subordinates, they cannot be held liable under § 1983. *Johnson*, 588 F.2d at 743-44. "A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v.*

REPORT AND RECOMMENDATION - 15

*County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Supervisory liability exists even without overt personal participation in an offensive act if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Id*. at 1447 (internal quotation marks and citations omitted). But under no circumstances is there respondeat superior liability under § 1983. That is, under no circumstances is there liability under § 1983 solely because one is responsible for the actions or omissions of another. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Ybarra v. Reno Thunderbird Mobile Home Vill*., 723 F.2d 675, 680-81 (9th Cir. 1984).

Mr. Abels alleges that the actions taken against him by Defendants Skipworth and Hill were taken "under the supervision of Harold Clarke." Dkt. 81, p. 1. He alleges that:

> Abels was sent to LP/WR by Harold Clarke, by way of a MAP, and when Abels and his mother started complaining about him being in a w/r for sex offenders and the mentally ill, and being attacked and beaten by one of these prisoners, and not getting any medical attention he was removed and placed back in prison and in an isolation cell by the defendants Kristen Skipworth, and Norman Hill, under the sole permission of Harold Clarke who is in charge of any transfers concerning MAP, participants in DOC.

Dkt. 81, p. 14.

Mr. Abel has failed to allege or provide evidence of any affirmative link between his alleged injuries and any conduct of Defendant Clarke. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). There are no allegations or evidence that Defendant Clarke personally participated in any constitutional deprivation or that he was aware of widespread abuses and, with deliberate indifference to Plaintiff's constitutional rights, failed to take action to prevent further misconduct. *See Ortez v. Washington County,* 88 F.3d 804, 809 (9th Cir.1996); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989); *King v. Atiyeh,* 814 F.2d 565, 568 (9th Cir.1987); *see also Monell v. New York City Department of Social Services,* 436 U.S. 658, 691-92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, the Court recommends that Defendant Clarke's motion for

REPORT AND RECOMMENDATION - 16

summary judgment on this ground be granted also.

## IV.  CONCLUSION

For the foregoing reasons, the undersigned recommends that Defendants' motion for summary judgment (Dkt. 120) be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 5, 2009**, as noted in the caption.

DATED this 19th day of May, 2009.

Karen L. Strombom
United States Magistrate Judge